[ECF No. 57]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| VICTORIA WELCH,<br><br>Plaintiff,<br><br>v.<br><br>SCHUTZ CONTAINER SYSTEMS, INC.,<br><br>Defendant. | Civil No. 23-3970 (ESK/SAK) |

## OPINION AND ORDER

This matter comes before the Court by way of Plaintiffs'[1] unopposed motion to approve the parties' proposed settlement agreement ("Settlement Agreement") pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and to certify the proposed collective for purposes of settlement pursuant to 29 U.S.C. § 216(b). *See* Pl.'s Motion [ECF No. 57]. The parties consented to the jurisdiction of the Magistrate Judge to enter a final order on Plaintiffs' motion pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73(b), and Local Civil Rule 73.1. *See* Consent Order [ECF No. 59]. The Court considered Plaintiffs' submissions [ECF Nos. 57, 63] and exercises its discretion to decide Plaintiffs' motion without oral argument, *see* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, Plaintiffs' motion is **GRANTED**.

---

[1] Representative Plaintiff and Opt-In Plaintiffs are referred to collectively as "Plaintiffs."

## I.  BACKGROUND

Victoria Welch ("Representative Plaintiff") filed this action against Schutz Container Systems, Inc. ("Defendant") on behalf of herself and other similarly situated employees, alleging violations of the FLSA and the North Carolina Wage and Hour Act, N.C. GEN. STAT. §§ 95-25.4, *et seq. See* Compl. [ECF No. 1]. Representative Plaintiff alleged, *inter alia*, that pursuant to three of Defendant's policies, she and similarly situated employees were not fully and properly paid for compensable work hours. *Id.* at 5–10 (alleging Defendant violated the FLSA through its use of a non-neutral time rounding down policy, improper calculation of overtime when employees received non-discretionary incentive payments, and wage deductions for uniform cleaning fees resulting in unpaid overtime); *see also* Compl. ¶¶ 32–58 [ECF No. 1]. Defendant denied these allegations, contending it properly paid Representative Plaintiff and other production and manufacturing employees for all overtime wages earned. *See* Def.'s Answ. [ECF No. 8].

The Court conditionally certified this collective action and approved the related Notice and Consent form. *See* Order Approving Notice and Consent [ECF No. 28]. A total of 203 employees, including Representative Plaintiff, have joined this action. *See* Notices of Consent to Join [ECF Nos. 29–36, 38–42, 44–46]; *see also* Settlement Agreement ¶ 5 [ECF No. 57-1]. The instant motion seeks final certification of the collective and approval of the Settlement Agreement.

## II.  FINAL COLLECTIVE CERTIFICATION

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). When employers violate FLSA overtime provisions, they may be liable to employees "in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." *Id.*

2

(quoting 29 U.S.C. § 216(b)). The FLSA "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations" through a collective action. *Genesis*, 569 U.S. at 69 (quoting 29 U.S.C. § 216(b)). Under the statutory requirements of the FLSA, "the existence of a collective action depends on the affirmative participation of opt-in plaintiffs." *Halle v. W. Penn. Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). Namely, opt-in plaintiffs must give their written consent to participate. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

A court certifies an FLSA collective in two steps. First, an initial preliminary certification is based on a court determination that "one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Payton-Fernandez v. Burlington Stores, Inc.*, 671 F. Supp. 3d 512, 521 (D.N.J. 2023). This requires a "modest factual showing" involving some evidence "beyond pure speculation" of a factual nexus between the manner that an employer's policy affected the representative plaintiff and the manner with which it affected collective employees. *Id.* After preliminary certification, counsel disseminates notice to potential collective members. Here, the Court preliminarily certified this collective on July 11, 2024. *See* Order [ECF No. 28]. Since then, hundreds of employees have filed consent forms with the Court. *See* Notices of Consent to Join [ECF Nos. 29–36; 38–42; 44–46]. A total of 203 collective members, including Representative Plaintiff, would therefore be subjected to the Settlement Agreement. *See* Pls.' Br. at 2 [ECF No. 57-2]. The Settlement Agreement does not purport to waive or modify any claims for employees who have not consented to this litigation.[2]

---

[2] This matter does not involve the settlement of prospective class members' unasserted FLSA

Plaintiffs now seek to complete the second step of final certification of the collective. To meet the burden for final certification, Representative Plaintiff must establish by a preponderance of the evidence that she and other hourly, non-exempt manufacturing/production workers are "similarly situated." *Rivet v. Off. Depot, Inc.*, 207 F. Supp. 3d 417, 423 (D.N.J. 2016). To determine whether the collective members and Representative Plaintiff are similarly situated, courts consider relevant factors, including: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 526, 536–37 (3d Cir. 2012).

Here, the Court finds by a preponderance of the evidence that the Named Plaintiff and collective members are similarly situated. All members of this action are "hourly, non-exempt manufacturing/production workers with substantially similar job duties" and all are subject to the same corporate policies and procedures at issue in this case. Suppl. Br. at 4 [ECF No. 63]; *see also* Pls.' Br. at 4–5 [ECF No. 57-2]. Further, all members advance the same claims and seek the same relief. *See id.* Individualized defenses have not been raised against members. *See id.* As evidenced by the parties' discovery exchange of time and payroll records, resolution of members' claims involves common factual investigation and arguments. *See Rivet*, 207 F. Supp. 3d at 427–28 ("the FLSA should be construed liberally to achieve its purpose," and courts therefore "[c]ommonly

---

claims as part of an opt-out class settlement under Rule 23(b)(3), and therefore the Court need not consider the recent decision in *Lundeen v. 10 West Ferry Street Operations LLC*, No. 24-3375, 2025 WL 2935340 (3d Cir. Oct 16, 2025). *See also* Pls.' Br. at 3 [ECF No. 57-2] ("Where, as here, there are no Rule 23 class action claims at issue, plaintiffs seeking approval of an FLSA collective action settlement pursuant to 29 U.S.C. § 216(b) are not subject to the same requirements applicable to settlements under Rule 23.").

4

allow representative employees to prove violations with respect to all employees."). Plaintiffs also note that the absence of final certification would force the hundreds of employees involved in this litigation to obtain individual counsel and each litigate individualized claims on their own behalf. *Id., see also* Suppl. Br. at 5 [ECF No. 63]. Finding that the collective members are similarly situated employees and their claims may be collectively resolved under the Settlement Agreement, the Court will certify the collective for purposes of settlement approval.

## III.    <u>THE SETTLEMENT AGREEMENT</u>

Plaintiffs also seek approval of the Settlement Agreement. Pursuant to this agreement, Defendant will pay $310,000 to a "Global Settlement Fund" for the claims asserted in this action. After deductions for related costs,[3] Settlement Awards will be distributed to each Opt-In Plaintiff from the remaining "Net Settlement Fund" ("Net Fund"). Settlement Agreement ¶¶ 11–20 [ECF No. 57-1]. From this Net Fund, Plaintiffs would each receive an amount "based on their proportionate share of alleged damages as calculated by Plaintiffs' counsel." *Id.* ¶ 46. To the extent any individual Plaintiff's proportionate share amounts to less than $10.00, said Plaintiff will be eligible to receive a minimum Settlement Award of $10.00. *Id.* In consideration of their Settlement Awards, each Opt-In Plaintiff agrees to release Defendant from any federal and state law wage claims which were alleged, could have been alleged, or are related to claims alleged in this action for the period of July 25, 2021 through July 30, 2023. *Id.* ¶¶ 13, 23, 24, 50. Pursuant to the Settlement Agreement, Named Plaintiff would also receive a Settlement Award in the amount of $5,000.00 and a Service Award, also in the amount of $5,000.00. *Id.* ¶¶ 29, 30, 54. The Service

---

[3] These deductions include all attorneys' fees, costs, expenses, the Service Award, Settlement Administrator Costs, and the employer share of taxes paid on the wage portion of the Settlement Awards. Settlement Agreement ¶ 18 [ECF No. 57-1].

Award represents payment for her "service in bringing and prosecuting the Action, and in consideration for Named Plaintiff's general release of claims." *Id.* ¶ 30.

"Although Third Circuit precedent is silent on the matter of judicial approval of FLSA settlements, district courts in this jurisdiction abide by the principle that settlement of FLSA claims under 29 U.S.C. § 216(b) requires court approval." *Fritz v. Terminite, Inc.*, No. 2:19-cv-15749, 2020 WL 5015508, at *1 (D.N.J. Aug. 25, 2020); *see also Orozco, et al. v. Eli Timberland Tree Service, LLC, et al.*, No. 2:24-cv-7045, 2025 WL 2304894, at *1 (D.N.J. Aug. 11, 2025) ("[D]istrict courts within the Third Circuit have . . . assumed that judicial approval is necessary."). In evaluating a proposed settlement of an FLSA action, "district courts within the Third Circuit have followed the guidance set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc.*" *Fritz*, 2020 WL 5015508, at *1 (citation omitted). Under this guidance, courts evaluate a proposed FLSA settlement using a three-part analysis. *Payton-Fernandez*, 671 F. Supp. 3d at 520. "First, the court must determine that the settlement concerns a bona fide dispute. Second, the court must determine that the settlement is fair and reasonable to the Plaintiff-employee. And, third, the court must determine that the agreement does not frustrate the implementation of the FLSA in the workplace." *Gabrielyan v. S.O. Rose Apartments LLC*, No. 2:15-cv-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015). Here, the Court finds the Settlement Agreement resolves a bona fide dispute between the parties, is fair and reasonable to Plaintiffs, and does not frustrate the implementation of the FLSA. The Court therefore approves the Settlement Agreement.

### (1) The Settlement Resolves a Bona Fide Dispute

"[A] district court may find that a proposed settlement agreement resolves a bona fide dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute.'" *In re Chickie's & Pete's Wage & Hour*

6

*Litig.*, No. 12-cv-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (citing *Lynn's Food Stores v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) ("In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim . . . ."). Here, Plaintiffs allege that Defendant failed to pay production/manufacturing employees overtime wages in violation of the FLSA and North Carolina Wage and Hour Act. *See generally* Compl. [ECF No. 1]; *see also* Pls.' Br. at 5 [ECF No. 57-2]. In furtherance of their claim, Plaintiffs engaged an analyst to review time and pay records produced in discovery to assess the purported wage damages. *See* Settlement Agreement ¶¶ 4, 7. [ECF No. 57-1]. Accordingly, the Court is satisfied that Plaintiffs' complaint raises fact-dependent allegations under the FLSA.

Defendant denied Plaintiffs' allegations in its Answer and "continues to deny" these allegations. *See* Settlement Agreement ¶ 3 [ECF No. 57-1]. In rejecting Plaintiffs' allegations, Defendant produced its own damages analysis using the same time and pay information used by the Plaintiff. *Id.* ¶ 7. As the parties engaged in settlement communications, they participated in a "thorough exchange of [their] respective legal and factual positions and multiple proposals and counterproposals," *Id.* ¶¶ 3, 7–8. *See also* Coffman Decl. ¶¶ 11–12 [ECF No. 63-2]. They continue to disagree on a variety of issues. *See* Settlement Agreement ¶ 8 [ECF No. 57-1]. The Court finds the parties' extensive engagement, including their acquiring of competing damages analyses, to be consistent with a bona fide dispute.

### (2) The Settlement is Fair and Reasonable

To determine whether the terms of an FLSA collective settlement agreement are fair, district courts in the Third Circuit utilize a set of factors outlined in *Girsh v. Jepson*, 521 F.2d 153

7

(3d Cir. 1975) ("*Girsh*"). *Brumley v. Camin Cargo Control, Inc.*, No. 2:08-cv-1798, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012). These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (cleaned up). An analysis of these factors follows.

The first *Girsh* factor considers the complexity, expense and likely duration of the litigation. Here, this case involves numerous claims alleged under state and federal law, implicating multiple Defendant's policies and over two hundred collective-member employees. *See* Suppl. Br. at 6 [ECF No. 63]. Plaintiffs assert that if this case were to proceed to trial, the parties would need to conduct depositions, engage in extensive motions practice—including collective certification motions and dispositive motions—and expend time preparing for a jury trial. *Id.* These activities were not undertaken because of the proposed resolution. *Id.* However, Plaintiffs estimate that "[c]ontinued litigation would likely have required a significant expenditure of additional resources . . . ." *Id.* The Cout is persuaded that resolution at this stage avoids extensive discovery, motion practice, expenses, and likely protracted litigation. *See* Pls.' Br. at 5 [ECF No. 57-2]; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) (settlement avoids "additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial," where it is likely "inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class"). This factor weighs in favor of approval of the settlement.

8

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Warfarin*, 391 F.3d at 536. Here, Plaintiffs assert that "by opting into this lawsuit, all of the Opt-In Plaintiffs designated Named Plaintiff Victoria Welch and her attorneys to make all decision on their behalf '[c]oncerning the litigation, the manner and method of conducting this litigation, and decisions regarding settlement, attorneys' fees, and expenses and all other matters pertaining to this lawsuit.'" Suppl. Brief at 7 [ECF No. 63]. Plaintiffs' counsel further states that "Named Plaintiff signed the Agreement, and there is no indication that any FLSA collective members do not support the settlement." *Id.*[4]

The third *Girsh* factor considers the stage of the proceeding and the extent of discovery to assess whether "counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). Here, the parties "engaged in formal written discovery, which included Defendant's production of payroll, timekeeping records, and other targeted formal business records with respect to Representative Plaintiff and the 203 Opt-in Plaintiffs." Coffman Decl. ¶ 11 [ECF No. 63-2]. Following the production of documents, the parties also "engaged in comprehensive communication regarding the allegations contained in the Complaint, Defendant's defenses, and exchanged their respective factual and legal positions relating to the allegations in the Complaint." *Id.* ¶¶ 11, 12. Over the course of several months, they "narrowed the scope of

---

[4] Although counsel states there is no indication that collective members do not support the settlement, the Court notes that counsel failed to indicate whether collective members were advised of the proposed settlement. The Court is nevertheless mindful that the "evaluation of [a] proposed settlement in this type of litigation . . . requires an amalgam of delicate balancing, gross approximations and rough justice." *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1385 (S.D.N.Y. 1972). The absence of additional information relating to this factor does not upset the balance, which overwhelmingly favors settlement approval.

their disputes for purposes of facilitating their settlement efforts." *Id.* ¶ 13. Plaintiffs also "retained an economist to construct a robust damages model using the pay and time information produced by Defendant, specific rates of pay over all applicable pay periods, each Opt-In Plaintiff's statute of limitations period, and determined the total potential damages for each claim if they prevailed on their claims of unpaid overtime wages and related damages." *Id.* Defendant also performed an independent analysis of damages. Settlement Agreement ¶ 7 [ECF No. 57-1]. After several months of settlement discussions, the parties reached a resolution in principle. Coffman Decl. ¶ 15 [ECF No. 63-2]. Given the comprehensive and extensive communications between counsel, accompanied by the exchange of highly relevant payroll information and competing damages analyses based upon these records, the Court is satisfied that Plaintiffs' counsel had an adequate appreciation of the merits of the case to negotiate a reasonable and fair settlement. This factor weighs in favor of settlement approval.

Taken together, the fourth, fifth, and sixth *Girsh* factors evaluate the settlement in light of the risks of establishing liability, damages, and maintaining the action through trial. Courts regularly approve settlements that constitute "only a fraction of the ultimate total exposure should the case be decided at trial." *Singleton v. First Student Mgmt. LLC*, No. 1:13-cv-1744, 2014 WL 3865853, at *7 (D.N.J. Aug. 6, 2014). Here, Plaintiffs calculate that $182,861.91 will be available from the settlement fund for individual settlement distributions. *See* Suppl. Br. at 8–9 [ECF No. 63]. This amount exceeds $179,995.46—the total damages for all unpaid overtime claims, as calculated by Plaintiffs' economist. *Id.* As the settlement is more than enough to compensate Plaintiffs for their claimed unpaid overtime wages, this factor supports the finding that the settlement is fair and reasonable.

The seventh *Girsh* factor considers whether Defendant can withstand a greater judgment. Plaintiffs state that Defendant's financial circumstances did not bear on the parties' settlement negotiations. Suppl. Br. at 9–10 [ECF No. 63]. The Court gives no weight to this factor.

The eighth and ninth *Girsh* factors weigh "the range of reasonableness of the settlement fund" against the often-competing realities of "the best possible recovery" and "the attendant risks of litigation." *Girsh*, 521 F.2d at 157. In other words, the Court must consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538. As asserted by Plaintiffs and discussed above, each Settlement Award exceeds the likely recovery of unpaid overtime under the FLSA. Suppl. Br. at 10 [ECF No. 63]. This recovery aligns favorably with other approved settlements in this district. *See, e.g., Cruz v. JMC Holdings, Ltd.*, No. 2:16-cv-9321, 2019 WL 4745284, at *6 (D.N.J. Sep. 30, 2019) (finding that a settlement providing 45% of total estimated value of plaintiffs' claims if plaintiffs successful on the merits was reasonable in an FLSA action); *Singleton*, 2014 WL 3865853, at *7 (settlement "may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be decided at trial"); *Lenahan v. Sears, Roebuck & Co.*, No. 3:02-cv-0045, 2006 WL 2085282, at *15–16 (D.N.J. July 24, 2006) (approving settlement of an FLSA action representing a 14% recovery of maximum potential exposure), *aff'd*, 266 F. App'x 114 (3d Cir. 2008). The Court finds this factor, like the overwhelming majority of factors discussed above, supports the finding that the Settlement Agreement is fair and reasonable.

The Court also finds the Service Award of $5,000.00 to Representative Plaintiff Victoria Welch to be fair and reasonable. "Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Payton-Fernandez*, 2024 WL 5202421, at *14

11

(quoting *Bredbenner v. Liberty Travel, Inc.*, No. 2:09-cv-1248, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011)). Where service award payments come out of a "common fund independent of attorneys' fees, the Court must 'carefully review' the request for fairness to other class members." *Bredbenner*, 2011 WL 1344745, at *22 (quoting in part *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005)). Here, Plaintiffs provide ample basis for Representative Welch's Service Award. She was "actively involved in the litigation, provided the information and documents that formed the basis of the lawsuit, was willing to assume the risk associated with being a named plaintiff, and provided plaintiffs' counsel with critical information to prosecute this lawsuit on behalf of herself and other employees." Pls.' Br. at 7 [ECF No. 57-2]. Consequently, Representative Plaintiff's services benefited all Opt-In Plaintiffs. This award is also consistent with awards in other FLSA actions in the Third Circuit. *See Payton-Fernandez*, 2024 WL 5202421, at *14 (finding appropriate a $10,000 service award provided to each named plaintiff); *see also Dominguez v. Galaxy Recycling, Inc.*, No. 2:12-cv-7521, 2017 WL 2495406, at *9 (D.N.J. June 9, 2017) (approving $10,000 service award to the named plaintiff).

Finally, the Court considers the reasonableness of the proposed attorneys' fee. Attorney's fees are expressly contemplated under 29 U.S.C. § 216(b). "To determine the reasonableness of an attorneys' fee award in an FLSA action, judicial review is required 'to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Morales v. Unique Beginning Caterers Ltd. Liab. Co.*, 2021 WL 5864061, at *2 (quoting *Brumley*, 2012 WL 1019337, at *9). "[F]ee awards around thirty (30) percent are routinely found reasonable" in the Third Circuit. *Morales*, 2021 WL 5864061, at *2. Here, Plaintiffs' counsel seek payment of attorneys' fees in the amount of $103,333.33 and costs in the amount of $11,358.76. Plaintiffs' counsel were retained on a

12

contingency fee basis. *See* Sattiraju Decl. ¶ 13 [ECF No. 63-1]. Accordingly, the proposed attorneys' fees were calculated under the percentage-of-recovery method at one-third of the total settlement fund, or $103,333.33. Settlement Agreement ¶ 53 [ECF No. 57-1].

To ensure the reasonableness of attorney's fees calculated under a percentage-of-recovery method, "a court should still perform a 'cross-check' using the 'lodestar' method." *Payton-Fernandez*, 671 F. Supp. 3d at 533 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005)). A lodestar award is calculated by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services," taking into consideration the given geographical area, the nature of the services provided, and the experience of the attorneys. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305. Here, Plaintiffs' counsel attest that they worked a total of 157 hours at rates ranging from $400 to $650 per hour. Suppl. Br. at 12 [ECF No. 63]. The "the total lodestar figure between all three law firms is $78,750." *Id.* Therefore, the blended rate of all counsel approximates $500 per hour, well within the range of reasonableness in FLSA cases in this district. *Id.*; *see also Li v. Sushi To Go Cherry Hill, LLC*, No. 22-cv-4734, 2023 WL 4958105, at *5 (D.N.J. Aug. 3, 2023) (collecting cases). Plaintiffs' counsel also request a 1.31 lodestar multiplier.[5] Suppl. Br. at 13. Lodestar multipliers "ranging from one to four are frequently awarded in common fund cases where the lodestar method is applied." *Payton-Fernandez*, 2024 WL 5202421, at *11 (internal citations omitted); *see also Pullinger v. Arther R. Todd Elec. Contractor, Inc.*, No. 1:22-cv-268, 2022 WL 4974816, at *3 (D.N.J. Oct. 4, 2022) ("[A] thirty-six percent award with a 1.32 lodestar multiplier is consistent with the award of attorneys' fees in FLSA in the Third Circuit, which ranges from roughly 20–45%."). The Court finds that

---

[5] A lodestar multiplier is calculated by dividing the requested fee award, here $103,333.33, by the lodestar, $78,750, resulting in a lodestar multiplier of 1.31.

13

the attorneys' fees requested here are well within the range of reasonableness under both the percentage-of-recovery method and the lodestar method. As such, the Court approves an award of attorney's fees in the amount of $103,333.33.

Litigation expenses of $11,358.76 included "costs to commence and prosecute this matter, costs to administer notice to the FLSA putative class members, costs associated with the vendor for purposes of constructing an analysis, and costs to administer the settlement." Pls.' Br. at 2 [ECF No. 57-2]. The Court finds the expenses incurred to be modest and reasonable. The Court therefore approves costs in the amount of $11,358.76.

**(3) The Settlement does not Frustrate FLSA Implementation.**

In assessing whether a settlement agreement frustrates the purpose of the FLSA, courts consider "three interrelated FLSA objectives . . . ." *Li*, 2023 WL 4958105, at *4. These objectives include: (1) "combatting 'inequalities in bargaining power between employers and employees,'" (2) promoting "widespread employer compliance with the FLSA," and (3) honoring "the 'private-public character of employee rights,' whereby the public has a general interest in employee well-being and access to fair wages." *Ortiz v. Freight Rite, Inc.*, No. 1:21-cv-1060, 2021 WL 5988582, at *4 (M.D. Pa. Dec. 17, 2021) (internal citations omitted). Courts look to "the scope of any confidentiality provisions and the breadth of any release of claims provisions" to assess the settlement's congruence with these objectives. *Id.* at *3 (internal citations omitted). Here, the proposed settlement does not require Plaintiffs to agree to a confidentiality provision. The release provision is also not overly broad, but rather appropriately tailored. In consideration of their settlement awards, Opt-In Plaintiffs release Defendant from any related wages or hours claims for the relevant period of July 25, 2021 through July 30, 2023. The Court therefore finds the Settlement Agreement does not frustrate the implementation of the FLSA.

14

IV.    **CONCLUSION**

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **2nd** day of **April, 2026**, that Plaintiffs' motion is **GRANTED** as follows:

1.    The action shall be finally designated a collective action under the FLSA for settlement purposes only;

2.    The Settlement Agreement is **APPROVED**;

3.    Attorneys' Fees in the amount of $103,333.33 and Costs in the amount of $11,358.76 are **APPROVED**;

4.    The Court **DISMISSES** the matter with prejudice.


                                                        s/ Sharon A. King
                                                        SHARON A. KING
                                                        United States Magistrate Judge


cc:  Hon. Edward S. Kiel, U.S.D.J.

15